**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD TORRES, | No. 2:18-CV-03141-JAM-DMC-P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| J. LEWIS, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs in violation the Eighth Amendment to the United States Constitution. See generally ECF No. 1. Pending before the Court is Defendants' motion for summary judgment. (ECF No. 22-2). Defendants contend that they are entitled to summary judgment because there is insufficient evidence to establish deliberate indifference to serious medical needs. Defendants also argue that this case must be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing suit. Because the Court resolves Defendants' motion on exhaustion grounds, it does not reach the Eighth Amendment question.

///

///

///

1

# I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a California state prisoner. See ECF No. 1. He was housed at High Desert State Prison (HDSP) at all relevant times. See id. at 2. He asserts a host of medical conditions, including foot pain, hypertension, bronchitis, sinusitis, rhinitis, asthma, musculoskeletal pain, and high blood pressure. Id. 12. He complains that Defendants were deliberately indifferent to his serious medical needs, contrary to the commands of the Eighth Amendment to the United States Constitution. See id. at 6, 12–13, 17.

Defendant R. Miranda is a physician's assistant at HDSP. Id. at 9. Miranda met with Plaintiff when Plaintiff sought treatment for his pain and breathing conditions. Id. at 12–13. Miranda, however, refused to provide Plaintiff any pain medication or order any tests to investigate other treatment avenues for Plaintiff's ailments. Id. at 12. Miranda told Plaintiff that he would not prescribe tests or medication because they "cost too much money." Id. Plaintiff also uses a cane because of his foot pain. Id. at 12–13. The cane helped alleviate some of Plaintiff's pain and allowed Plaintiff to walk. Id. at 13. Miranda ordered revocation of Plaintiff's cane without providing an alternative mobility device. Id. Miranda also allegedly failed to treat Plaintiff's high blood pressure, causing Plaintiff severe headaches and an increased risk of stroke. Id. at 13. Plaintiff complains that Miranda's failure to treat Plaintiff's conditions constitutes deliberate indifference and cruel and unusual punishment under the Eighth Amendment. Id. at 13.

Defendant Abur-Rahman is also a medical doctor and surgeon and HDSP. Id. at 16. Plaintiff assertedly met with Abur-Rahman about all of Plaintiff's illnesses. Id. at 17. Abur-Rahman refused to treat any of Plaintiff's conditions and told Plaintiff that he did not care how much pain Plaintiff was experiencing. Id. Plaintiff complains that Abur-Rahman's refusal to treat Plaintiff constitutes deliberate indifference to Plaintiff's serious medical needs. Id.

Plaintiff also names as defendants J. Lewis, K. Thorton, G. Church, L. Gideon, and L. Christensen. Id. at 1, 3. Lewis is Deputy Director of California Department of Corrections and Rehabilitation (CDCR). Id. at 3, 7. Thorton is an Associate Warden and ADA coordinator at HDSP. Id. at 3, 11. Church is a medical doctor at HDSP. Id. at 3, 8. Christensen is a nurse practitioner at HDSP. Id. at 3, 9. Gideon is a medical doctor at HDSP. Id. at 1, 10. Plaintiff does

not allege that Lewis, Thorton, Church, Gideon, or Christensen directly treated Plaintiff for any medical condition. Id. at 7–11, 15, 18–19. Plaintiff alleges they are responsible for an Eighth Amendment violation in various supervisory or vicarious capacities. Id. at 7–11, 15, 18–19. Plaintiff alleges that they failed to intervene to remedy Miranda's and Abur-Rahman inadequate treatment of Plaintiff or command that Plaintiff receive aids such as a cane. Id. at 7–11, 15, 18–19.

## II.  THE PARTIES' EVIDENCE

### A.  Plaintiff's Noncompliance with Local Rule 260(b):

Local Rule 260(b) requires parties opposing motions for summary judgment to reproduce the itemized facts in the moving party's Statement of Undisputed Facts and admit the facts that are undisputed and deny those that are disputed. See L.R. 260(b). The opposing party must include with each denial a citation to the portion of any document supporting the denial. Id. Opposing parties may also include Statements of Disputed Facts encompassing all material facts over which there is a genuine dispute precluding summary judgment. Id. Plaintiff has not done either. He has not responded to Defendants' motion for summary judgment, let alone reproduced Defendants' Statement of Undisputed Facts or submitted a Statement of Disputed Facts. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. See, e.g., Beard v. Banks, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); Brito v. Barr, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020); see also Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

### B.  Plaintiff's Evidence:

Plaintiff has not submitted evidence in response to Defendants' motion. Because Plaintiff is pro se, however, the Court "must consider as evidence in his opposition to summary judgment all of [the] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true

1    and correct." Jones, 393 F.3d at 923. Plaintiff declares under penalty of perjury that the

2    allegations in his complaint are true and correct and implies they are based on personal

3    knowledge throughout his complaint. See, e.g., ECF No. 1 at 5, 7. The Court takes the

4    contentions in Plaintiff's pleadings as evidence for the purposes of summary judgment. See Jones,

5    393 F.3d at 923.

6            In relevant part, Plaintiff alleges in his complaint that he exhausted administrative

7    remedies. Id. at 19. He states his grievance was approved at two levels. Id. at 2.

8    **C. Defendants' Evidence:[1]**

9            Defendants contend that the following facts are undisputed. Defendants' statement

10   of undisputed facts is supported by the declarations of Defendants Abdur-Rahman;[2] Christensen,

11   Church; Miranda, and Thornton.[3] See ECF Nos. 22-4–6, 10–11. Defendants' statement is also

12   supported by the declarations, with exhibits, of Diane Gamez, a CDCR custodian of records, and

13   C. Henderson, a Staff Services Manager in CDCR's Policy and Risk Management division. See

14   ECF Nos. 22-7–8. Defendants also submit as support the declaration of David E. Kuchinsky,

15   attorney for Defendants, and the attached exhibit; namely, Kuchinsky's deposition of Plaintiff.

16   See ECF No. 22-9, Kuchinsky Decl., Ex. A.

17           Plaintiff was a state prisoner incarcerated at HDSP. ECF No. 22-3 at 1. Each

18   Defendant was a CDCR employee during the timeframe alleged in Plaintiff's complaint. Id. at 2.

19   Defendant Thornton is an Associate Warden at HDSP and in charge of ADA compliance. Id. She

20   is not a medical doctor and never treated or made any medical decisions concerning Plaintiff or

21   any other inmate. Id. She never met Plaintiff and, prior to this action, was not aware of Plaintiff.

22   Id. Thornton never issued any orders concerning Plaintiff or reviewed any complaints, grievances,

23   or requests from Plaintiff. Id. Likewise, Defendant Christensen was not aware of Plaintiff prior to

24   this lawsuit and was never involved in Plaintiff's medical care. Id. Nor was Defendant Church,

25   who was not an HDSP employee when Plaintiff was housed there, aware of Plaintiff or his

26   _____

27   [1] Defendants contend, in their motion for summary judgment, that Defendants Lewis and Gideon were never served with process and are not under the Court's jurisdiction. The motion does not otherwise address either Defendant.
     [2] Plaintiff misspells Defendant Abdur-Rahman's name as Abur-Rahman, as indicated under Plaintiff's Allegations.

28   [3] Plaintiff misspells Defendant Thornton's name as Thorton, as indicated under Plaintiff's Allegations.

1    medical issues prior to this action. Id. Church played no role in Plaintiff's medical care. Id.

2          Defendant Miranda is a nurse practitioner at HDSP. Id. He met with Plaintiff on

3    two occasions, August 24, 2018, and October 12, 2018. Id. On both occasions, Miranda reviewed

4    Plaintiff's medical history, current symptoms, and ability to undertake daily activities. Id. He

5    examined Plaintiff and determined an appropriate course of treatment based on what was

6    indicated for Plaintiff's symptoms. Id. On both occasions, Plaintiff did not meet the medical

7    criteria for a walking cane. Id. at 3. Miranda chose a course of medical treatment for Plaintiff that

8    was appropriate under the circumstances each time that he met with Plaintiff. Id.

9          Defendant Abdur-Rahman is a primary-care physician at HDSP. Id. He met with

10    Plaintiff on five occasions: August 10, 2018, November 16, 2018, December 18, 2018, March 20,

11    2019, and 9 March 22, 2019. Id. Abdur-Rahman likewise examined Plaintiff and determined a

12    course of treatment based on what was medically indicated after reviewing Plaintiff's medical

13    history, current symptoms, and ability to undertake daily activities. Id. Plaintiff did not meet the

14    criteria for a walking cane on any of the occasions Abdur-Rahman met with Plaintiff. Id. Abdur-

15    Rahman always chose a course of treatment for Plaintiff that was medically acceptable under the

16    circumstances each time he met with Plaintiff. Id.

17          Decisions to order for patients a cane, walker, or wheelchair are within a medical

18    provider's clinical judgment. Id. Decisions to award a cane or similar device depends on whether a

19    device is medically indicated or justified for a patient. Id. Medical indications for a cane or mobility

20    device include a patient's medically limited ability to walk and/or undertake activities of daily living

21    such that a cane or other mobility device would be beneficial. Id. A mobility device is not medically

22    indicated if a patient is able to walk on their own and displays a normal gait, even if the patient

23    reports pain. Id. at 4. A reasonable and medically accepted course of treatment is to first refer patients

24    to physical therapy for evaluation prior to prescription of a mobility device. Id. This is especially so

25    when patients present normal gait and can walk on their own, regardless of reports of pain. Id.

26          Plaintiff is not a doctor and cannot diagnose himself. Id. Plaintiff received significant

27    and continuous care while he was housed at HDSP. Id. He received regular weight and vitals checks,

28    as well as regular blood pressure monitoring. Id. He was also prescribed ongoing blood pressure

medication, hypertension medication, episodic mood disorder medication, a CPAP-BiPAP machine for Plaintiff's sleep apnea, a Levalbuterol inhaler, and a Formoterol inhaler. Id.

CDCR, including HDSP, has an established administrative review process for inmate grievances. Id. Inmates may submit grievances related to medical issues. Id. The medical grievance process was in place while Plaintiff was housed at HDSP. Id. To exhaust administrative remedies on a grievance related to an inmate's medical care issues, inmates must submit a grievance through the third and final level of review and receive a final decision from headquarters. Id.

Plaintiff has submitted two grievances during his incarceration. Id. Only one grievance, HDSP-HC-18001392, is relevant. Id. HDSP received the first-level grievance on November 26, 2018. Id. HDSP rendered an institution-level decision on January 2, 2019. Id. CDCR headquarters received an appeal of HDSP's decision on January 22, 2019. Id. at 5. Headquarters issued a decision on April 17, 2019. Id. Plaintiff did not exhaust his administrative remedies prior to filing this action. Id. He filed his complaint on December 4, 2018, before a decision was rendered on his grievance at either the institutional level or headquarters level. Id. at 1, 5. C. Henderson's declaration, as well as copies of Plaintiff's grievances attached as exhibits thereto, confirm the dates of submission and decision. See ECF No. 22-8, Henderson Decl. at 3:16–20 & Exs. A–C.

### III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

6

1    Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

2            If the moving party meets its initial responsibility, the burden then shifts to the

3    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

4    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

5    establish the existence of this factual dispute, the opposing party may not rely upon the

6    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

7    form of affidavits, and/or admissible discovery material, in support of its contention that the

8    dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

9    opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

10   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

11   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

12   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

13   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

14   (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

15   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

16   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

17   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

18   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

19   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

20           In resolving the summary judgment motion, the court examines the pleadings,

21   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

22   See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

23   477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

24   court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

25   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

26   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

27   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

28   1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

1  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

2  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

3  imposed." <u>Anderson</u>, 477 U.S. at 251.

4  ### IV. <u>DISCUSSION</u>

5    Plaintiff asserts that Defendants were deliberately indifferent to his serious medical

6  needs in violation of the Eighth Amendment. <u>See</u> ECF No. 1 at 6, 12–13, 17. He specifically

7  contends Defendants Miranda and Abdur-Rahman directly refused to treat various serious

8  conditions such as high blood pressure and foot pain, and that Miranda went so far as to revoke

9  Plaintiff's walking cane. <u>Id.</u> at 11–13, 17. He argues that Defendants Lewis, Thorton, Church,

10  Gideon, or Christensen are responsible for the alleged Eighth Amendment violation in various

11  supervisory or vicarious capacities. <u>Id.</u> at 7–11, 15, 18–19. Defendants move for summary

12  judgment and argue, in pertinent part, that Plaintiff cannot maintain the current action because he

13  failed to first exhaust his administrative remedies prior to filing suit as required under federal law.

14  ECF No. 22-2 at 10–11.

15   **A. Exhaustion Requirements:**

16    Prisoners seeking relief under § 1983 must exhaust all available administrative

17  remedies prior to bringing suit. <u>See</u> 42 U.S.C. § 1997e(a). This requirement is mandatory

18  regardless of the relief sought. <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001) (overruling

19  <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of

20  the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

21  while the lawsuit is pending. <u>See</u> <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002). The

22  Supreme Court addressed the exhaustion requirement in <u>Jones v. Bock</u>, 549 U.S. 199 (2007), and

23  held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

24  because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

25  defendants; (2) an individual named as a defendant does not necessarily need to be named in the

26  grievance process for exhaustion to be considered adequate because the applicable procedural

27  rules that a prisoner must follow are defined by the particular grievance process, not by the

28  PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

1    all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in the first

2    instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

3    burden of showing that the grievance process was not available, for example because it was

4    thwarted, prolonged, or inadequate. See id.

5            The Supreme Court held in Woodford v. Ngo that, in order to exhaust

6    administrative remedies, the prisoner must comply with all of the prison system's procedural

7    rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus,

8    exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90.

9    Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

10   which affords prison officials a full and fair opportunity to address the prisoner's claims. See id.

11   at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the

12   quantity of prisoner suits "because some prisoners are successful in the administrative process,

13   and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

14   When reviewing exhaustion under California prison regulations which have since been amended,

15   the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

16   adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557

17   F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

18   (reviewing exhaustion under prior California regulations).

19           Until June 1, 2020, California allowed inmates to administratively appeal "any

20   policy, decision, action, condition, or omission by the department or its staff that the inmate or

21   parolee can demonstrate as having a material adverse effect upon his or her health, safety, or

22   welfare." Cal. Code Regs., tit. 15, § 3084.1(a); Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-

23   CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). CDCR used a three-step process

24   for grievances. Id. (describing the former three-step process). CDCR also used the three-step

25   process for health care grievances until September 1, 2017. Id. CDCR then adopted a new two-

26   step procedure for health care grievances (which was renumbered to its current section number in

27   2018). See Cal. Code Regs., tit. 15, § 3999.225–.230; see also Singh v. Nicolas, No. 18-cv-1852,

28   2019 WL 2142105 at *3 & nn. 1–4 (E.D. Cal. May 16, 2019) (discussing the restructured

9

1  grievance procedure); <u>Garrett v. Finander</u>, 2019 WL 7879659, at *2–3 (C.D. Cal. Dec. 5, 2019)

2  (describing the new grievance procedures). The first level of review is the institutional level of

3  review. Cal. Code Regs., tit. 15, § 3999.228(a). The second level of review is the headquarters

4  level of review. Cal. Code Regs., tit. 15, § 3999.230(a). The headquarters level is the final level of

5  health care grievance review. Cal. Code Regs., tit. 15, § 3999.230(h). The headquarters level

6  decision also exhausts administrative remedies. <u>Id.</u>

7          Under the two-step procedure, inmates must submit a health care grievance on a

8  "CDCR 602 HC" form. Cal. Code Regs., tit. 15, § 3999.227(a). First, the inmate must submit the

9  form to the grievance office "where the grievant is housed within 30 calendar days of: (1) the

10  action or decision being grieved, or (2) initial knowledge of the action or decision being grieved."

11  § 3999.227(b). Second, if an inmate is dissatisfied with the institutional level disposition of their

12  grievance, the inmate may appeal to headquarters, the Health Care Correspondence and Appeals

13  Branch. Cal. Code Regs., tit. 15, § 3999.229(a), .230.

14      **B.  Plaintiff Failed to Exhaust Administrative Remedies Prior to Filing Suit:**

15          Plaintiff alleges in his complaint that he exhausted his administrative remedies

16  before filing this case. <u>See</u> ECF No. 1 at 2, 19. He specifically states that he has filed an appeal

17  and therefore has exhausted administrative remedies. <u>Id.</u> at 19. He also identifies that, at least at

18  the time of his complaint, his grievance had been appealed to the second level of review. <u>Id.</u> at 2.

19  Plaintiff may mistake appeal for exhaustion. <u>Id.</u>

20          Save for the bare allegations in his complaint that he exhausted his available

21  administrative remedies, Plaintiff submits no evidence to contradict Defendants' evidence that

22  Plaintiff filed his claim before receiving a first-level, institutional decision. <u>See</u> ECF No. 1 at 2,

23  19. And, in any event, Defendants' Statement of Undisputed Facts, which the Court has deemed

24  Plaintiff to have admitted, indicates that Plaintiff did *not* exhaust administrative remedies.[4] <u>See</u>

25

26

27

28

[4] As indicated, the health care grievance process that inmates must follow has been restructured and renumbered. <u>See,</u> <u>e.g.</u>, Cal. Code Regs. tit. 15 § 399.227–.237. C. Henderson, a Staff Services Manager in CDCR's Policy and Risk Management division notes so in his declaration. ECF No. 22-8, Henderson Decl. at 2:26–3:7. It is not clear whether Defendants contend Plaintiff must follow the previous or amended procedures. Defendants contend, in the authority cited in their motion for summary judgment, that inmates must follow a three-level process of review. <u>See</u> ECF No. 22-2 at 10–11. But Defendants' Statement of Undisputed Facts indicates that a two-level process is applicable. <u>See</u> ECF No. 22-3 at 4–5. The argument section in Defendants' motion suggests the same. ECF No. 22-2 at 11.

1  ECF No. 22-3 at 4–5. Plaintiff indicates that he proceeded through two levels of review prior to

2  filing suit, but Defendants' Statement of Undisputed Facts and the attached documents indicate

3  otherwise. Cf. id. at 2. C. Henderson, in his declaration, states that Plaintiff filed his first-level

4  grievance on November 26, 2018 and that the grievance was resolved at the institutional level on

5  January 2, 2019. ECF No. 22-8, Henderson Decl. at 3:16–18. The second, headquarters level

6  office did not receive Plaintiff's appeal of the institutional level decision until January 22, 2019.

7  Id. at 3:19. And headquarters did not issue a decision until April 17, 2019. Id. at 3:20. Copies of

8  Plaintiff's grievances, as well as a CDCR history of all of Plaintiff's grievances, attached to

9  Henderson's declaration as exhibits, confirm those dates. See id. Exs. A–C. Plaintiff filed this

10  action on December 4, 2018, prior to the issuance of the institutional level decision on January 2,

11  2019. See ECF No. 1. He did not exhaust his remedies until headquarters issued its April 17,

12  2019 decision. Cal. Code Regs., tit. 15, § 3999.230(h).

13          Prisoners seeking relief under § 1983 must exhaust all available administrative

14  remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory. See

15  Booth, 532 U.S. at 741. Plaintiff filed his grievance and then, without waiting for even a first

16  level decision, filed this action. This he cannot do. Exhaustion of administrative remedies must

17  precede the filing of a complaint. McKinney, 311 F.3d at 1199. Plaintiff exhausted his

18  administrative remedies on April 17, 2019, but the exhaustion requirement is not satisfied if

19  administrative remedies are resolved during the pendency of a case. Id. Plaintiff may allege that

20  he exhausted his available administrative remedies before filing his complaint, but that allegation

21  is factually unsupported. There is no genuine dispute as to the material fact that Plaintiff failed to

22  exhaust all available administrative remedies prior to filing this lawsuit. And on that, Defendants

23  are entitled to summary judgment. The undersigned accordingly recommends that Plaintiff's case

24  be dismissed without prejudice. See O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1059 (9th

25  Cir. 2007).

26  **V. CONCLUSION**

27          Based on the foregoing, the undersigned recommends that defendants' motion for

28  summary judgment (ECF No. 22-2) be granted and the case dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 9, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE